**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CP PRODUCTIONS, INC., | ) | |
| | ) | Case: 1:12-mc-00381 (RJL) |
| Petitioner, | ) | |
| | ) | Judge: Honorable Richard J. Leon |
| v. | ) | |
| | ) | |
| COMCAST CABLE | ) | [Case pending in the U.S. District Court |
| COMMUNICATIONS, LLC, | ) | for the Northern District of Illinois, |
| | ) | No. 1:12-cv-01505] |
| Respondent. | ) | |
| _____ | ) | |

## REPLY TO COMCAST'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Petitioner CP Productions, Inc., respectfully submits this reply to Comcast Cable Communications LLC's ("Comcast") opposition to Petitioner's Motion to Compel. (ECF No. 3.) Comcast has no lawful basis under the Federal Rules of Civil Procedure for avoiding compliance with Petitioner's subpoena. Petitioner addresses the arguments raised in Comcast's opposition memorandum herein.

## BACKGROUND

On March 1, 2012, Petitioner brought a copyright infringement action against unnamed defendants, alleging that the putative defendants illegally copied and distributed its copyrighted work to others over the Internet. *CP Productions, Inc. v. Does 1-38*, No. 12-1505 (N.D. Ill. Mar. 1, 2012), ECF No. 1. Along with its Complaint, Petitioner submitted an Exhibit of a list of Internet Service Providers ("ISPs") and Internet Protocol ("IP") addresses associated with the infringing activities. *Id.*, ECF No. 1-1. On March 5, 2012, Petitioner moved for expedited discovery to obtain certain identifying information for the putative defendants. *Id.*, ECF No. 6.

On March 9, 2012, the court granted Petitioner's expedited discovery motion and granted Petitioner leave to issue subpoenas *duces tecum* to various ISPs for production of identifying information with respect to the IP addresses of the putative defendants. *Id.*, ECF No. 12. In accordance with this Order, Petitioner issued subpoenas to various ISPs, including Comcast on April 28, 2012. On May 1, 2012, Comcast sent a letter to Petitioner objecting to Plaintiff's subpoena on four independent grounds.

On July 19, 2012, Petitioner filed a motion to compel Comcast's compliance with Petitioner's subpoena with this Court. (ECF No. 1.) In its motion Petitioner explained that "Comcast's objections offer no proper basis under the Rules upon which to excuse its compliance with the Subpoena." (*Id.* at 1.) Comcast filed its motion in opposition to Petitioner's motion to compel on August 2, 2012. (ECF No. 3.) Petitioner submits this reply to Comcast's motion.

## DISCUSSION

In Comcast's motion in opposition to Petitioner's motion to compel, Comcast again raises its improper joinder argument, but omits discussing the other three arguments raised in its objection letter. (*Id.* at 7-12) Instead, Comcast raises two new arguments not previously raised in its objection letter. First, Comcast argues that Petitioner's subpoena subjects it to an undue burden. (*Id.* at 6-7.) Second, Comcast accuses Petitioner of unfair litigation tactics. (*Id.* at 12-15.)

The issues raised by Comcast were argued and analyzed at length in another case in this District. *AF Holdings LLC v. Does 1-1,058*, No. 12-00048 (D.D.C. 2012). The Court in *AF Holdings* denied Comcast's, and several other Internet Service Providers', motion to quash the plaintiff's subpoenas and compelled the Internet Service Providers to provide the plaintiff with the information sought in the subpoena. *AF Holdings*, No. 12-00048 (D.D.C. Aug. 6, 2012), ECF

Nos. 46, attached hereto as Exhibit A. The court found that the Internet Service Providers

("ISPs") were not able to identify any burden for complying with the plaintiff's subpoenas and

that "the Movant ISPs eschew the text and plain meaning of the Rule by arguing that *any* burden

placed upon them in this case is unacceptable." (*Id.* at 16.) The court further explained that

consideration of joinder is premature at this early stage of the litigation. (*Id.* at 19.) Finally, the

Court explicitly declined to comment on the ISPs allegations of unfair litigation tactics and

forum-shopping as these issues are not germane to a legal proceeding. (*Id.* at 41.) The *AF*

*Holdings* decision thoroughly analyzed the arguments made by ISPs, including arguments raised

by Comcast at a special hearing held in the matter, and point by point determined that they had

not demonstrated a valid basis on which to avoid compliance with the plaintiff's subpoena. (*See*

*generally id.*) This Court should find the same. For the reasons set forth in the *AF Holdings*

decision and for the reasons set forth herein, the Court should grant Petitioner's motion to

compel Comcast's compliance with the subpoena.

**I.    Discovery of the Identifying Information Petitioner Seeks is Relevant to this Action**

As an initial matter, the identifying information Petitioner seeks in its subpoenas is highly

relevant to Petitioner's claims. Petitioner needs the identifying information of the Doe

Defendants in order to proceed in this lawsuit. *CP Production, Inc. v. Does 1-38*, No. 12-1505

(N.D. Ill. Mar. 5, 2012), ECF No. 7 at 5 ("the Plaintiff needs Defendants' actual contact

information to be able to communication with them and name them in this lawsuit.") Because

discovery is permitted only for information "that is relevant to any party's claim or defense"

(Fed. R. Civ. P. 26(b)(1)), the court in the underlying action agreed that the information is

relevant when it granted Petitioner's discovery motion. *Id.*, ECF No. 12.

## II.  Comcast's Undue Burden Arguments Focus Exclusively on the Burden Faced by its Party Subscribers and are Erroneous

Comcast argues that Petitioner's subpoena subjects it to an undue burden. (ECF No. 3 at 6-7.) All of Comcast's arguments, however, focus on the burden that would be placed on its subscribers in the underlying action. (*Id.*) Comcast has the burden to show why *it* is burdened by Petitioner's subpoena; it is not enough for Comcast to suggest that a subpoena imposes an undue burden on someone else—that is an argument for the other individual to make. *Northrop Corp.*, 751 F.2d at 404 ("The burden of proving that a subpoena *duces tecum* is oppressive is on the party moving for relief on this ground.").

Instead of discussing the burden it faces, Comcast relies heavily on a recent decision by the Honorable Judge Wilkins. (ECF No. 3 at 6-7) (citing *Millennium TGA, Inc. v. Comcast Cable Communications, LLC*, 2012 WL 2371426 (D.D.C. June 25, 2012)). In *Millennium*, in response to identical objections raised by Comcast Cable Communications, LLC ("Comcast"), Magistrate Judge Alan Kay granted the plaintiff's motion to compel after finding that movant's "defenses (lack of jurisdiction, improper joinder) are not at issue at this stage of the proceedings nor is it appropriate for Comcast, a nonparty, to raise such these defenses on behalf of its subscribers." *Millennium TGA, Inc.*, No. 12-mc-00150 (D.D.C. Apr. 18, 2012), ECF No. 15 at 4-5. Movant objected to the decision. The Honorable Judge Wilkins overturned Magistrate Judge Kay's order and denied the plaintiff's motion to compel for two untenable reasons: 1) Rule 45 offers territorial protections to third parties not subject to a subpoena; and 2) the plaintiff's subpoena subjects those third parties to an undue burden. *Millennium TGA, Inc., LLC*, 2012 WL 2371426. It bears mentioning that neither of these reasons were raised or briefed by the parties in *Millennium*, were discussed by Magistrate Judge Kay, or were raised by Comcast in its objection

to Petitioner's subpoena. Petitioner responds to these arguments below; the authority offered by

Petitioner herein was not considered by Judge Wilkins.

**1.  The Territorial Protections Embedded in Rule 45 do not Extend to Comcast's Subscribers**

This Circuit has observed that "the rules governing subpoenas and nonparty discovery

have a clearly territorial focus." *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998).

However, this "territorial focus" is for the benefit of nonparties from whom discovery is sought.

*Id.* ("The rules governing subpoenas and nonparty discovery have a clearly territorial focus.

Applications for orders *compelling disclosure from nonparties* must be made to the court in the

district where the discovery is to be taken….") (emphasis added). Non-party undue burden

concerns are properly focused on the party from whom discovery is sought. *See, e.g.*, *Watts v.

S.E.C.* 482, F.3d 501, 509 (D.C. Cir. 2007) (discussing the concerns associated with subjecting

subpoenaed non-party government agencies to undue burden).

To hold that Rule 45 provides equivalent territorial protection to both subpoenaed

respondents and third parties who might raise privacy objections with respect to a subpoena

would render Rule 45 inoperable. Imagine that a plaintiff seeking the identity of a rental car

driver had to identify common geography between the rental car provider and an out-of-state

driver in order to issue a subpoena seeking the customer's identity. Such a location would often

not even exist. In the online infringement context, broad swaths of the U.S. population would be

immune from being identified in infringement actions. College students who transferred schools,

were home for the summer, or recently graduated would be immune from identification so long

as they resided in a different federal judicial district than their alma mater. Individuals who

committed infringement from a hotel or on a mobile device while travelling would similarly be

immunized from identification. Individuals residing in states with multiple judicial districts, such

5

as Texas, would also enjoy broad protection from identification.[1] Rule 45 cannot support an interpretation that renders Petitioner unable to identify those who violated its copyrights. *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.").

### 2.   Petitioner's Subpoena Does Not Impose any Territorial Burden on Comcast's Subscribers

Comcast suggests that its subscribers will be subject to territorial inconvenience by Petitioner's subpoenas. (ECF No. 3 at 6-7.) This, of course, is not true. Although a motion to quash may only be heard in the district from which a subpoena was issued, parties can always challenge the disclosure of their identifying information in the court where the underlying action is pending. *See e.g.*, Fed. R. Civ. P. 26(c). There is simply no reason why someone would need to travel from the Northern District of Illinois to the District of Columbia to challenge the disclosure of their identifying information.[2]

To the extent that Comcast suggests that it should avoid compliance with Petitioner's subpoenas because its subscribers might be confused about how to defend against Petitioner's copyright infringement claims, Petitioner would make two observations. First, Comcast can reduce this confusion via a notice to its subscribers with information on how to properly

---

[1] Rule 45 requires that subpoenas be issued from the place of production and that service be made within the district, within 100 miles of the district, according to state law or according to federal law. Take an action is pending in the Southern District of Texas, Houston Division. Even if a plaintiff knew the city of residence of a Texas-based subscriber, there is a strong chance that the plaintiff would be unable to identify him. For example, if a subscriber is located in the Southern District of Texas, but his ISP is based in the Eastern or Northern Districts of Texas, then there would simply be no federal district from which a plaintiff could issue a valid subpoena. *See* Fed. R. Civ. P. 45(b)(2)(B); *see also* Tex. R. Civ. P. 176.3 (limiting the territorial range of subpoenas to 150 miles).

[2] If anything, the issuance of Petitioner's subpoena from this District *lessens* the burden on the alleged infringers because it provides a second (perhaps more convenient) forum in which to file motions challenging the disclosure of their identifying information.

challenge the disclosure of their identifying information. Second, as one court in the U.S. District Court for the Northern District of Illinois recently did in response to near-identical arguments by Comcast's counsel, this Court could grant Petitioner's motion to compel and then transfer the subpoena to the district where the underlying action is pending for hearings on subscriber-filed motions to quash. *See Bubble Gum Productions, LLC v. Does 1-60*, No. 12-3046 (N.D. Ill. July 13, 2012), ECF No. 22, attached hereto as Exhibit B.

### III.    Comcast's Joinder Objection is Erroneous and Unavailing

Comcast argues that joinder of the Doe Defendants is improper. (ECF No. 3 at 7-12.) Comcast's joinder argument is erroneous because it suffers from at least two fatal procedural defects. First, joinder objections do not fall within Rule 45's list of permissible grounds for quashing or modifying a subpoena. *See* Fed. R. Civ. P. 45. The objection should be denied on this basis alone. Second, Comcast has no colorable basis for claiming standing to challenge permissive joinder in an action to which it is not a party.

Beyond these procedural defects, Comcast's joinder objection is premature because at this procedural juncture, the issue of joinder is unripe for determination. The Doe Defendants have not yet been named as parties. The weight of authority suggests that Petitioner is able to satisfy the requirements for the permissive joinder of the Doe Defendants under Rule 20, and that a finding of misjoinder would be premature prior to the point at which the putative defendants have been identified, named, and served with process. In this District and nationwide, courts have determined that allegations concerning putative defendants' use of the BitTorrent file-sharing protocol may suffice to establish a logical relationship between claims against putative defendants in BitTorrent-based copyright infringement litigation. *See, e.g.*, *Imperial Enters. Inc. v. Does 1–3,145*, No. 11-529 (D.D.C. Aug. 30, 2011), ECF No. 43 at *3–5, 8 (Walton, J.); *W.*

*Coast Prod., Inc. v. Does 1–5,829*, No. 11-0057, 2011 WL 2292239, at \*5 (D.D.C. June 10, 2011) (Kollar-Kotelly, J.); *Donkeyball Movie, LLC v. Does 1–171*, No. 10-1520 (BAH), ____ F. Supp. 2d ____, 2011 WL 1807452, at \*4–9 (D.D.C. May 12, 2011) (Howell, J.); *Voltage Pictures, LLC v. Does 1–5.000*, No. 10-0873,  ____ F. Supp. 2d. ____, 2011 WL 1807438, at \*4–9 (D.D.C. May 12, 2011) (Howell, J.); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) (Howell, J.); *see also AF Holdings v. Does 1-162*,  No. 11-23036 (S.D. Fla. Feb. 14, 2012), ECF No. 27 at 6 ("If and when the Doe Defendants are identified and served with the Complaint, the issue of misjoinder may again be raised, to the extent necessary, based upon the actual parties involved at that point in time. Only then will the Court have at hand all that it needs to know to make a legally correct ruling."); *Patrick Collins, Inc. v. John Does 1– 15*, No. 11-02164, 2012 WL 415436, at \*2–4 (D. Colo. Feb. 8, 2012) (Arguello, J.) (sustaining joinder and citing *Call of the Wild*); *Patrick Collins, Inc. v. Does 1–22*, No. 11-cv-01772-AW, 2011 WL 5439005, at \*2–4 (D. Md. Nov. 8, 2011) (sustaining joinder and citing *Call of the Wild*); *Patrick Collins, Inc. v. Does 1–2,590*, No. C 11-2766 MEJ, 2011 WL 4407172, at \*4–7 (N.D. Cal. Sept. 22, 2011) (James, J.) (sustaining joinder and citing *Call of the Wild*); *First Time Videos, LLC v. Does 1–76*, No 11-3831, 2011 WL 3586245, at \*4 (N.D. Ill. Aug. 16, 2011) (Bucklo, J.) (collecting cases and concluding that "[t]he overwhelming majority of courts" have denied motions to sever "prior to discovery"); *First Time Videos, LLC v. Does 1–500*, 276 FRD 241, 2011 WL 3498227, at \*9–11 (N.D. Ill. Aug. 9, 2011) (Castillo, J.).

Further, Petitioner would—in a hypothetical request for leave to amend its complaint—be able to identify common questions of law and fact. For instance, Petitioner would have to establish against each putative defendant the same legal claims concerning the validity of the copyright in the movie at issue and the infringement of the exclusive rights reserved to Petitioner

as the copyright holder. Finally, joinder of the putative defendants would not prejudice any party or cause needless delay. To the contrary, "joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Call of the Wild*, 770 F. Supp. 2d at 345; *see also First Time Videos, LLC v. Does 1–500*, 276 FRD 241, 2011 WL 3498227, at *9–11 (N.D. Ill. Aug. 9, 2011) ("[J]oined defendants enjoy the benefit of seeing what defenses, if any, other defendants may assert to avoid liability.").

**IV.  Comcast's Arguments Regarding Unfair Litigation Tactics are Not Relevant to the Legal Standard Governing Motions to Compel and Factually Unsupported**

Comcast describes Petitioner as engaging in unfair litigation tactics, going so far as to accuse Petitioner of extortion. (ECF No. 3 at 5) (accusing Petitioner of "shak[ing] down the Doe defendants.") There is no good way or even good reason to respond to unsubstantiated character attacks leveled by a self-interested adversary. Character attacks should be seen for what they are—a manipulative device that is used when a speaker lacks a substantive basis for the relief it seeks. Yet, to simply ignore these character attacks in light of the intense vitriol that was directed against Petitioner and Petitioner's counsel by Comcast would be to ignore the elephant in the room. For this reason, Petitioner responds to Comcast's undignified statements.

First, Comcast accuses producers of pornographic movies using "John Doe" suits *en masse* to identify copyright infringers. (ECF No. 3 at 12.) This accusation suggests its own rebuttal. Without a large and growing problem of copyright infringement, there could not be an increasing level of copyright infringement litigation. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928–29 (2005) ("digital distribution of copyrighted material threatens copyright holders as never before.") There is nothing wrong with copyright infringement litigation—except, of course, from the perspective of the infringer.

Second, Comcast accuses Petitioner of using "well-documented 'intimidating tactics.'" (ECF No. 3 at 13.) For being so "well-documented", as Comcast describes, Comcast's failure to provide any documentation of Petitioner's so-called "intimidating tactics" is puzzling. (*See generally* ECF No. 3.) As an indication of how unusual the "intimidating tactics" argument becomes, Comcast references Judge Wilkins' taking of judicial notice of pleadings filed by Petitioner. (*Id.* at 13) (citing *Millennium TGA*, 2012 WL 2371426, at *7). If basic settlement correspondence constitutes engaging in intimidating tactics, then what attorney would be insulated from such accusations?

Third, Comcast accuses Petitioner of using a "Doe defendant's concern with being publicly charged with downloading pornographic films to wrest settlement from identified subscribers." (ECF No. 3 at 13-14.) Once again, Comcast presents no actual knowledge or evidence to support this outrageous statement. (*See generally id.*) Further, Petitioner does not know what its alternative is. It is obviously true that no one wants to be named as a defendant in a lawsuit involving stealing pornographic films, or mainstream films for that matter. All litigation is inherently coercive. But simply because litigation is unpleasant (as it is for every litigant, including Petitioner) does not mean that a Court should preclude Petitioner from learning the identities of those who infringed on its copyright. Petitioner would prefer that no one infringed on its copyrighted works.

Finally, Comcast argues that Petitioner's joinder of multiple defendants in a single suit denies the federal courts additional revenue. (ECF No. 3 at 15.) The judicial branch, of course, is not tasked with raising revenue. *See* U.S. Const. art. III. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury*, 5 U.S. at 177. Further, if Comcast

has concerns about federal court revenue, the lower hanging fruit is class actions, by which

millions of dollars in filing fees are lost every year in the name of judicial efficiency.

## CONCLUSION

The Court should grant Petitioner's motion to compel Comcast's compliance with the

subpoena. Discovery of the identifying information is relevant. Comcast's undue burden

arguments focus exclusively on the burden faced by its party subscribers and are erroneous.

Comcast's joinder objection is premature and erroneous. Comcast's arguments regarding unfair

litigation tactics are not relevant to the legal standard governing motions to compel and are

factually unsupported.


Respectfully submitted,

CP PRODUCTIONS, INC.


**DATED**: August 9, 2012


By: /s/ Paul A. Duffy
Paul A. Duffy, Esq. (D.C. Bar Number: IL0014)
Prenda Law Inc.
161 N. Clark St., Suite 3200
Chicago, IL 60601
Telephone: (312) 880-9160
Facsimile:   (312) 893-5677
E-mail: paduffy@wefightpiracy.com
*Counsel for the Petitioner*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 9, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.


By: /s/ Paul A. Duffy
Paul A. Duffy, Esq.